UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PENNY HATTINGER,** *on behalf of minor child C.W.*,

        **Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

Civil Action 2:20-cv-2221
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

Plaintiff, Penny Hattinger ("Plaintiff"), brings this action on behalf of her minor child, C.W., under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying C.W.'s application for child's supplemental security income. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Response in Opposition (ECF No. 17), and the administrative record. (ECF No. 14.) For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.

### I.     BACKGROUND

Plaintiff protectively filed an application for child's supplemental security income on behalf of C.W. on December 30, 2016. (R. at 168.) The application was denied initially on May 25, 2017, and on reconsideration on August 29, 2017. (*Id.* at 66–80, 82–93.) Subsequently, Administrative Law Judge Heidi Southern (the "ALJ") held a hearing on March 11, 2019, at which Plaintiff and C.W., represented by counsel, appeared and testified. (*Id.* at 37–65.) The

ALJ issued a decision on March 20, 2019, denying benefits. (R. at 9–36.) On March 10, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (1–6.)

Plaintiff filed the instant action on May 1, 2020. (ECF No. 1.) Plaintiff's sole contention of error is that the ALJ erred in her consideration and weighing of the school speech pathologist's opinion. (Pl.'s Statement of Errors 13–17, ECF No. 15.)

## II. THE ALJ'S DECISION

On March 20, 2019, the ALJ issued a decision finding that C.W. was not disabled within the meaning of the Social Security Act. (R. at 9–36.) The ALJ first set forth the three-step sequential evaluation process the Social Security Regulations require ALJs to employ in assessing whether an individual under the age of 18 is disabled.[1] (R. at 13–15); *see also* 20 C.F.R. § 416.924(a). At step one of the sequential evaluation, the ALJ found that C.W. had not engaged in substantial gainful activity since his application was filed. (R. at 16.) At step two, the ALJ concluded that C.W. had the severe impairments of mixed receptive-expressive

---

[1] The Social Security Regulations require the ALJ to comply with the following three-step sequential evaluation process to determine if a child is disabled:

> We follow a set order to determine whether you are disabled. If you are doing substantial gainful activity, we will determine that you are not disabled and not review your claim further. If you are not doing substantial gainful activity, we will consider your physical or mental impairment(s) first to see if you have an impairment or combination of impairments that is severe. If your impairment(s) is not severe, we will determine that you are not disabled and not review your claim further. If your impairment(s) is severe, we will review your claim further to see if you have an impairment(s) that meets, medically equals, or functionally equals the listings. If you have such an impairment(s), and it meets the duration requirement, we will find that you are disabled. If you do not have such an impairment(s), or if it does not meet the duration requirement, we will find that you are not disabled.

20 C.F.R. § 416.924(a).

language disorder; attention-deficit hyperactivity disorder (ADHD); and anxiety disorder. (*Id*. at 16–18.) The ALJ concluded at step three that C.W. does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, or that functionally equals the severity of the listings. (*Id.* at 18–32.) In finding that C.W.'s impairments do not functionally equal the severity of the listings, the ALJ discussed C.W.'s functioning in the six domains identified in the regulations, (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. (R. at 25–32); *see also* 20 C.F.R. § 416.926a(b). The ALJ found that C.W. had less than marked limitations in: (1) acquiring and using information, (2) attending and completing tasks, and (3) interacting and relating with others and no limitations in the other three areas. (R. at 25–32.). Because she found that C.W. did not have either marked limitations in two domains of functioning or extreme limitation in one domain of functioning, the ALJ concluded that C.W. has not been disabled since the 2016 application. (*Id.* at 32.) In reaching this conclusion, the ALJ assigned "partial weight" to the opinion of Ms. Julie Zinc, the school intervention specialist, and to the opinion of Dr. Stroebel, state-agency reviewer. (*Id.* at 22.) She assigned "little" weight to the opinion of Mr. Eric Johnson, the school speech pathologist. (*Id.* at 22–23.) She assigned great weight to the opinions of the state-agency reviewers, Drs. Ugbana, Warren, and Goldsmith; and to examining speech pathologist Morgan Helser. (*Id.* at 21–25.)

### III. RELEVANT RECORD EVIDENCE

The following summarizes the record evidence relevant to Plaintiff's statement of errors:

### A.     Eric Johnson, M.A., CCC-SLP

Eric Johnson, M.A., CCC-SLP, C.W.'s school speech pathologist, wrote a letter on C.W.'s behalf.  (R. at 395.)  A stamp on the letter indicates that the Social Security Administration received the letter on January 3, 2017, but there is no indication of when Mr. Johnson wrote the letter.  (*Id.*)  In the letter, Mr. Johnson wrote as follows:

> [C.W.] was previously diagnosed as Speech Language Impaired . . . . [C.W.] receives therapy 1x per week for moderate deficits in the areas of semantics, receptive language, and syntax that affect the student's ability to comprehend, analyze, and produce language effectively.  Specifically, he struggles to understand concepts of functional language, interpret verbally presented material, and produce sentences of varying length and syntactic complexity.

(*Id.*)  The remainder of the letter discusses the challenges that children with similar limitations face, but does not specify which, if any, of these difficulties C.W. experiences.  (*Id.*)

### B.     Hearing testimony

C.W. testified at the hearing.  (R. at 42–49.)  During introductory instructions, he was able to respond verbally that he understood the ALJ's instructions.  (*Id.* at 42.)  He was also able to answer the ALJ's simple questions about his age, grade, and where he attended school.  (*Id.* at 43.)  When asked about his public-school experience, C.W. said that he was bullied by other children because "I wear glasses and stuff." (*Id.* at 44.)  He said that he responded to the bullying by "[telling] the teachers." (*Id.*)  C.W. told the ALJ that his favorite subject was science "because you can learn about facts, and dinosaurs, and stuff." (*Id.* at 45.)  In response to a question about what he did for fun, C.W. told the ALJ that he liked to play with glow-in-the-dark figures and that he would play outside when it was warm enough.  (*Id.* at 45–46.)  C.W. expressed that he had favorite television programs and that he would "usually read dinosaur books." (*Id.* at 46–47.)

When asked about whether he had received help for his speech issues, he responded that his public school had helped him in "first grade and kindergarten" because he "had nice teachers." (R. at 47.)  C.W. said that he took "ADHD pills" and that they helped because they calmed him down. (*Id.*)  When asked about spending time with friends, C.W. said that he had a "girlfriend" and would "go to her house to swim with her" during the summer. (*Id.* at 48.)  C.W. said that he was able to complete homework and that his grades were "usually a 100 or 90 or 50." (*Id.*)

Plaintiff also testified at the hearing. (R. at 50–64.)  She testified that "[C.W.] has a lot of slow learning traits.  Like, it takes him a minute to catch onto something." (*Id.* at 50.)  She also said that C.W. will sometimes start "crying out of nowhere." (*Id.*)  Plaintiff testified that C.W. has difficulty staying on-task. (*Id.* at 54.)  She testified that once or twice a week, he needs multiple reminders to sign-in to his online school. (*Id.*)  She said he was able to focus on his favorite television show when he watched it. (*Id.* at 56.)  Plaintiff testified that C.W. was "hyper," and that he would "just start bouncing off the walls for no reason, running around the house." (*Id.*)  She said that the ADHD medication only works "sometimes," and that C.W. would still act "hyper" "every other two days." (*Id.* at 56–57.)  She also testified that C.W. had only been on ADHD medication for a "couple months" because she "didn't agree with trying the pills because it scares me, because my older son is on them, and it turned him into something different." (*Id.* at 63.)

Plaintiff said that C.W. had trouble interacting with other children and that he sometimes hit or bit other children, but also said he had friends. (R. at 58, 61.)  She said C.W. would cry when given constructive criticism or when "he does not get his way." (*Id.* at 59.)  She said that

5

at the public school, C.W. was bullied for wearing glasses and because he was a "slow learner." (*Id.* at 60.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

Plaintiff's sole contention of error is that the ALJ erred in her consideration and weighing of the school speech pathologist's, Mr. Johnson's, opinion. (Pl.'s Statement of Errors 13–17, ECF No. 15.) Plaintiff argues, *inter alia*, that the ALJ incorrectly categorized Mr. Johnson as a non-acceptable medical source. (*Id.*)

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544

(6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to

8

explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, the ALJ provided the following discussion of Mr. Johnson's opinion:

> The undersigned assigns the opinion of Mr. Johnson little weight. First, the undersigned notes that the assessment is not dated; therefore, it is difficult to place it into context with regards to the claimant's treatment history. Further, speech pathologists are not included among the acceptable sources of medical evidence defined in the regulations (20 CFR 416.913). Therefore information provided by a speech pathologist does not equal in probative value reports from those medical sources shown as being acceptable such as licensed physicians (20 CFR 416.913 and 416.927). More importantly, the claimant is now at a mild/at risk receptive language disorder with normal articulation and expressive language skills (6F/2). He progressed well with speech therapy at Nationwide Children's, and Ms. Hottinger [*sic*] was very pleased with his progress (2F/5). He showed no difficulty expressing his thoughts to the undersigned at the hearing, and the undersigned had no difficulty understanding him during the hearing.

(R. at 22–23.)

As Plaintiff points out, the ALJ incorrectly categorized Mr. Johnson as a non-acceptable medical source. Speech pathologist are acceptable sources for language impairments. *See* 20 C.F.R. § 416.902(a)(5); *see also Brochu v. Astrue*, No. CIV.A. 10-11848, 2011 WL 3840225, at *5 (E.D. Mich. May 25, 2011), *report and recommendation adopted sub nom. Brochu v. Comm'r of Soc. Sec.,* No. 10-11848, 2011 WL 3840222 (E.D. Mich. Aug. 30, 2011) ("An acceptable medical source has been defined to include . . . speech pathologists."). Thus, contrary to the ALJ's determination, Mr. Johnson was an acceptable medical source. Plaintiff also correctly points out that the ALJ was inconsistent when she discounted the opinion of Mr. Johnson

because she erroneously thought he was a non-medical source, yet did not similarly discount the opinions of Ms. Helser, another speech pathologist.  (R. at 22.)

Moreover, Mr. Johnson was C.W.'s treating speech pathologist.  As outlined above, treating sources are entitled to controlling weight unless the ALJ gives good reasons for discounting the opinion.  Thus, the ALJ did not recognize that Mr. Johnson was an acceptable medical source nor did she recognize that his opinion should be given the special deference afforded to treating sources.  Accordingly, the Court finds that the ALJ erred in her consideration of Mr. Johnson's opinion.

The Court concludes, however, that this error is harmless.  Even where the ALJ violates the treating physician rule, the *Wilson* Court considered three possible scenarios that could lead a court to a finding of harmless error.  378 F.3d at 547.  First, the Court indicated that harmless error might occur "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it . . . ."  *Id.*  Second, the Court noted that if the ALJ's decision was "consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant."  *Id.*  Finally, *Wilson* considered the possibility of a scenario "where the Commissioner has met the goal of § 1527(d)(2)–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation."  *Id.*  Since *Wilson*, the Sixth Circuit has continued to conduct a harmless error analysis in cases in which the claimant asserts that the ALJ failed to comply with the good-reason requirement.  *See, e.g., Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006) (finding that even though the ALJ failed to meet the letter of the good-reason requirement the ALJ met the goal by

10

indirectly attacking the consistency of the medical opinions); *Bowen*, 478 F.3d at 749 (finding that the facts did not satisfy potential harmless error justifications).

This case falls in the second category.  Mr. Johnson wrote that C.W. has "moderate deficits in the areas of semantics, receptive language, and syntax that affect the student's ability to comprehend, analyze, and produce language effectively."  (R. at 395.)  The ALJ concluded that C.W. had "less than marked" limitations in (1) acquiring and using information, (2) attending and completing tasks, and (3) interacting and relating with others.  (*Id.* at 22–23.)  Finding "less than marked" limitations in these three areas appropriately corresponds with Mr. Johnson's opinion that C.W. had moderate language deficits.  *See Zeiger v. Colvin*, No. 1:13CV732, 2014 WL 4421395, at *9 (N.D. Ohio Sept. 8, 2014) (affirming the Commissioner's decision where the ALJ interpreted a consultative examiner's opinion that the plaintiff had "moderate" impairments to mean the plaintiff had "less than marked" limitations in the corresponding functional domain).  Moreover, Mr. Johnson's opinion is brief: it is only two full paragraphs, and the second paragraph speaks in generalities about children with language limitations; it does not represent that those general limitations apply to C.W.  (R. at 395.)  Thus, Mr. Johnson's opinion that C.W. has moderate language deficits is the only portion of the letter that offers guidance on C.W.'s limitations.  Because the ALJ's conclusions were consistent with that portion of the letter, the ALJ's error in not properly considering Mr. Johnson's opinion was harmless.

## VI.     DISPOSITION

Based on the foregoing analysis, Plaintiff's Statement of Errors is **OVERRULED**, and the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE